IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                        CRIMINAL ACTION NO. 2:17-cr-00109

JEREMIAH JOE JOHNSON,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Jeremiah Joe Johnson's Motion for Compassionate Release, [ECF No. 25]. The court in deciding such motions will consider the following: whether the defendant has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, the defendant must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus. For the reasons that follow, the Motion is **DENIED without prejudice**.

I.   Background

On October 5, 2017, Mr. Johnson was sentenced to 108 months of imprisonment, followed by four years of supervised release upon his guilty plea to

possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). *See* [ECF No. 15]. Mr. Johnson is currently incarcerated at Federal Correctional Institution Ashland ("FCI Ashland") with a projected release date of November 19, 2024. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited August 11, 2020).

FCI Ashland is a low security institution with an adjacent minimum security satellite camp. FCI Ashland houses a total of 1,097 inmates (128 at the camp and 969 at the correctional institution). *FCI Ashland*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/ash/ (last visited August 12, 2020). According to the Bureau of Prisons ("BOP"), FCI Ashland has only had one staff member test positive for COVID-19. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 12, 2020). That staff member has since recovered. *Id.* In addition, FCI Ashland has one inmate who is currently positive for COVID-19, *see id.*, though it has had three positive inmate tests, *see COVID-19 Inmate Test Information*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 12, 2020).[1] Only 118 inmates at FCI Ashland have been tested for COVID-19. *See COVID-19 Inmate Test*

---

[1] The BOP website clarifies that "the number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once." COVID-19 Inmate Test Information, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 12, 2020).

*Information*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 12, 2020).

Mr. Johnson now petitions the court, arguing that the combination of his health issues, the COVID-19 pandemic, and prison conditions constitute "extraordinary and compelling reasons" for his release. Mr. Johnson suffers from multiple health issues. Relevant here, Mr. Johnson's medical records indicate that he has been diagnosed with type two diabetes mellitus, for which he regularly takes medication. *See* Ex. 1 [ECF. No. 25–1]. Though Mr. Johnson's records indicate that the dosage of his daily diabetes medication was recently doubled, the records also show that, as of June 15, 2020, the pharmacy at FCI Ashland had not dispensed any of the higher dosage tablets to Mr. Johnson. *See id.* Mr. Johnson is also diagnosed with hypertension, for which he takes daily medication. *See id.* He also suffers from asthma, for which he is prescribed both an albuterol inhaler, for use only as needed, and a mometasone furoate inhaler, for use each evening. *See id.* Despite reflecting his condition and active prescriptions, Mr. Johnson's medical records do not specify the severity of his asthma. *See id.*

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020)

(internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Johnson's sentence under compassionate release, I must find that Mr. Johnson has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). He has not satisfied all of those requirements, and I do not reduce his sentence today.

### (a) Exhaustion

Section 3582(c)(1)(A) provides that:
> … the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*, may reduce the term of imprisonment…

18 U.S.C. 3582(c)(1)(A) (emphasis added). Prior to the enactment of the First Step Act, only the Director of BOP could file a motion for compassionate release. The First Step Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, provided certain circumstances were satisfied. Put plainly, the court may modify a term of imprisonment upon the earliest of one of three

4

events:

1. When the Director of BOP has made a motion;

2. When the defendant has exhausted his or her administrative remedies with BOP and petitioned the court;

3. When 30 days have lapsed from the date of the request to BOP and defendant has petitioned the court.

*Id.*

The language of the statute is clear. There are two ways for a defendant to petition the court for compassionate release. Those two options are alternatives. With the first option, the defendant must fully complete BOP's administrative appeals process. With the second option, "the statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No more, no less." *United States v. Carter*, ---F. Supp.3d----, ---, No. 2:19-CR-00078, 2020 WL 3458598, at *2 (S.D.W. Va. June 25, 2020).

In this case, I **FIND** that Mr. Johnson has met the necessary criteria outlined in § 3582(c)(1)(A) to petition this court for compassionate release. On May 7, 2020, Mr. Johnson filed a request for compassionate release with the Warden at FCI Ashland. *See Institution Response – Inmate Request to Staff Member*, Ex. 1 [ECF No. 25–1]. The Warden responded, denying the request on May 19, 2020. *See id.* Mr. Johnson filed the instant Emergency Request for Compassionate Release, [ECF. No. 25], on July 7, 2020. Thus, thirty days had passed between the Warden's receipt of Mr. Johnson's initial request and when Mr. Johnson petitioned the court. Mr.

5

Johnson has satisfied the requirements of the statute to bring his motion.

### (b) Extraordinary and compelling reasons for release

Once an inmate has satisfied administrative exhaustion, a court may reduce his sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[2] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts, including this court, have found "'extraordinary and compelling' reasons 'supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19.'"[3] *United States v. White*, No. 2:17-CR-00198-4, 2020 WL

---

[2] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

[3] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.3 Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2,

3244122, at *3 (S.D.W. Va. June 12, 2020) (citing *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *7 (N.D.N.Y. May 27, 2020)); *see also United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); *see also Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-athigher risk.html). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See White*, 2020 WL 3244122, at *6; s*ee also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-

---

2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

extra-precautions/people-with-medical-conditions.html (last visited August 12, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

I recently held in *United States v. John Delaney Wilson*, ---F. Supp.3d----, ---, No. 2:18-cr-00295, 2020 WL 4287592 at *2 (S.D.W. Va. July 27, 2020), that I should not find "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him more at risk for developing a serious illness from COVID-19 and the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 12, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

In *Wilson*, I also emphasized that if an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks

provided to inmates, and the number of COVID-19 cases in that prison.

Here, Mr. Johnson has presented sufficient evidence that he has a condition that makes him at risk for developing serious illness from COVID-19. The CDC lists type two diabetes mellitus as an underlying medical condition that presents an increased risk for a person of any age developing a severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 12, 2020). Additionally, the CDC lists hypertension and moderate-to-severe asthma as underlying conditions that might present an increased risk of severe illness from COVID-19. *Id.* Though Mr. Johnson's records do not indicate the severity of his asthma, the well-documented presence of Mr. Johnson's combination of type two diabetes mellitus, hypertension, and asthma, convinces me that Mr. Johnson is at risk for developing severe illness from COVID-19.

Despite presenting sufficient evidence that he suffers from medical conditions identified by CDC as placing him at a risk for severe illness from the virus, Mr. Johnson has not demonstrated that he is housed at a facility with a high risk for contracting COVID-19. Factors to be considered at this stage of the inquiry include, but are not limited to, the steps BOP has taken to stop the spread of COVID-19 in the particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

As previously mentioned, Mr. Johnson is currently imprisoned at FCI Ashland. According to BOP, FCI Ashland currently has one inmate and one staff member who have tested positive for COVID-19, though the staff member has since recovered. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 12, 2020). While the number of positive COVID-19 tests in a facility is not dispositive of BOP's ability to prevent the spread of the virus, I recently held that "a high number of positive cases is a clear indication that a person housed at a facility is at high risk. Absent that showing, it is difficult to evaluate the particularized threat of the virus to a defendant." *United States v. Gorman*, No. 2:29-cr-00131, 2020 WL 4342218 at *3 (S.D.W. Va. July 28, 2020). The BOP, however, should not take this as an invitation to conduct minimal testing for COVID-19 among inmate populations. Like in *Gorman*, I am concerned that the reported positive tests at FCI Ashland do not accurately reflect the actual number of cases in the facility. BOP reports that only 118 of the 1,097 inmates have been tested.[4] *COVID-19 Inmate Test Information*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 12, 2020). Without more thorough testing within BOP facilities, I am left to wonder whether the present risk to Mr. Johnson and other inmates is in fact much greater than is

---

[4] FCI Ashland houses a total of 1,097 inmates. BOP reports that 128 inmates are housed at the adjacent camp and 969 inmates are housed at the FCI. FCI Ashland, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/mil/ (last visited August 12, 2020). It is not clear to the court whether the reported 118 tests that were administered to inmates at FCI Ashland includes the inmates housed at the camp. BOP does not report any separate numbers about COVID-19 testing at the Ashland camp.

reported. I will not, however, find that a facility presents a high risk simply based on speculation. While any number of COVID-19 cases within the prison context is great cause for concern, simply a generalized assertion of the existence of the pandemic alone should not independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). That BOP reports only two total confirmed cases of COVID-19 within FCI Ashland indicates that there is no reason to believe the conditions at the facility are such that BOP cannot effectively prevent the spread of COVID-19.

In addition to the low number of cases reported at FCI Ashland, the government, in opposing Mr. Johnson's motion, writes that FCI Ashland has taken several steps to prevent the spread of COVID-19. [ECF. No. 27]. Specifically, the government reports that FCI Ashland is taking the following measures:

- Temperature checks on inmates are performed at least weekly. Every inmate is also temperature checked before going to work, commissary, or recreation.

- Inmates are to remain in their living quarters, and do not intermingle between units.

- Staff and inmates are provided with face coverings. Inmates are required to wear them at all times. Staff are required to wear them at all times, unless they are in a private setting with good social distancing (private office setting).

- Staff are screened daily, via temperature check and questionnaire.

- All inmates are tested for COVID-19 upon arrival and placed in quarantine for 14 days. They are then tested again for COVID-19 prior to release to General Population. All inmates are again tested for COVID-19 prior to transfer or release.

11

> They are then quarantined for 14 days and tested for COVID-19 prior to leaving.

- Movement has been restricted nationwide, and FCI Ashland has received less than 100 inmates in the past 4 months. An empty Unit is setup for isolation at the FCI (HB) and the Camp (AA). The Quarantine Unit is empty at the camp (AB), and the Gymnasium and Visitation is set up with 50 cots for quarantine at the FCI. The education department is set up as a Recovery Area at the FCI, and the Visiting Room at the Camp for Recovery.

- Inmates are required to clean their areas, and then moved to the recreation yard, while the area is deep cleaned without interference. The unit is left empty for 1 and 1/2 hours after cleaning. This is done twice, weekly.

- The facility was recently approved to send 10 inmates at a time to the commissary to allow for good social distancing and allow extra time out of units.

- Unicor [an inmate work program] has been working for the past 6 weeks on a lightened crew. (about 60%). All Unicor inmates are in one unit, to separate them from the rest of the population.

- Staff are not allowed to visit other areas in the institution from that which they are assigned. A waiver has been approved for only 1 unit team member to make rounds for all units in the Special Housing Unit.

- Each department has a staff member assigned to each unit, not allowing for intermingling.

- Reminder emails are sent out weekly to staff and inmates to ensure proper hand sanitation, cell sanitation, and cleaning.

- A COVID-19 desktop icon has been set up with all information for staff and what has been sent to inmates.

- An "ASH/staff" questions mailbox was established to allow staff to send emails regarding COVID-19 response in a more private setting.

[ECF. No. 27].

These measures, taken together with the low number of confirmed cases of COVID-19, convince me that the conditions at FCI Ashland are not presently such that BOP cannot effectively prevent the spread of COVID-19 within the prison. Accordingly, I do not find extraordinary and compelling reasons justifying Mr. Johnson's release and do not reduce his sentence. Therefore, I need not determine whether he is a danger to the community or consider the § 3553(a) factors.

### III.  Conclusion

The court **DENIES without prejudice** Mr. Johnson's Emergency Motion for Compassionate Release, [ECF No. 25]. The court **DIRECTS** the Clerk to send a copy of this Order to Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:  August 12, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE