IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           CRIMINAL ACTION NO. 2:17-cr-00109

JEREMIAH JOE JOHNSON,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant Jeremiah Joe Johnson's Motion for Reconsideration [ECF No. 29] and Emergency Motion for Compassionate Release [ECF No. 30]. I previously denied Mr. Johnson's motion for compassionate release because he could not show that the conditions at Federal Correctional Institution Ashland ("FCI Ashland"), where he is incarcerated, warranted his release. However, since that time, FCI Ashland has had a significant outbreak of COVID-19. Given the change in circumstances, Mr. Johnson requested reconsideration of my prior ruling [ECF No. 29] and then filed his new Emergency Motion [ECF No. 30]. The question before this court is whether Mr. Johnson has demonstrated that extraordinary and compelling reasons justify his request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, Mr. Johnson's Emergency Motion for Compassionate Release [ECF No. 30] is **GRANTED**.

I.  Background

On October 5, 2017, I sentenced Mr. Johnson to 108 months of imprisonment, followed by four years of supervised release after he pleaded guilty to possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). [ECF No. 15]. Mr. Johnson is currently incarcerated at FCI Ashland with a projected release date of November 19, 2024. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Jan. 14, 2021). FCI Ashland is a low security institution with an adjacent minimum security satellite camp. FCI Ashland currently houses a total of 989 inmates (154 at the camp and 835 at the correctional institution). *FCI Ashland*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/ash/ (last visited Jan. 14, 2021).

Mr. Johnson initially petitioned the court for compassionate release on May 28, 2020. [ECF No. 21]. I denied that motion without prejudice because Mr. Johnson had not exhausted his administrative remedies. [ECF No. 22]. Mr. Johnson then exhausted his administrative remedies and filed a new motion for compassionate release on July 7, 2020. [ECF No. 25]. In that motion, Mr. Johnson argued that the combination of his health issues, the COVID-19 pandemic, and prison conditions constituted "extraordinary and compelling reasons" for his release. Though I found that Mr. Johnson had exhausted his administrative remedies and had a qualifying medical condition, I did not find that Mr. Johnson had demonstrated extraordinary and compelling reasons justifying his release. [ECF No. 28].

Specifically, at the time I denied Mr. Johnson's last motion, BOP had reported a total of only three inmate cases of COVID-19 at FCI Ashland, and only one of those was active at the time. [ECF No. 28, at 2]. In addition to the low number of COVID-19 cases, the United States responded to Mr. Johnson's motion with a thorough list of the steps BOP was taking at FCI Ashland to prevent an outbreak of the virus. I held that those measures, taken together with the low number of cases, indicated that the conditions at FCI Ashland were not so dire as to warrant compassionate release. [ECF No. 28, at 9–13].

Unfortunately, the conditions at FCI Ashland worsened after my earlier ruling. During the pendency of Mr. Johnson's Motion for Reconsideration [ECF No. 29], I granted compassionate release to another inmate at FCI Ashland and noted in my order that BOP was reporting active cases of COVID-19 in 179 inmates and 21 staff. *United States v. Henderson*, No. 2:99-cr-00214-1, 2020 WL 7264461, at \*1 (S.D. W. Va. Dec. 10, 2020). Though the situation has improved today, with only three inmates and 10 staff currently positive, BOP now reports that FCI Ashland has had six inmates die of COVID-19, and it has had 351 inmates and 42 staff previously infected. *COVID-19 Update*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 14, 2021).

II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are

'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations omitted); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Johnson's sentence under compassionate release, I must find that Mr. Johnson has exhausted his administrative remedies, that he has demonstrated "extraordinary and compelling reasons," and that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); 18 U.S.C § 3582(c)(1)(A)(i).

### (a) Exhaustion

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment. . . ." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020).

In this case, I have already found that Mr. Johnson has exhausted his administrative remedies by applying to the Warden at FCI Ashland for compassionate release and then waiting 30 days. [ECF No. 28, at 5]. And, when FCI

Ashland began experiencing its recent COVID-19 outbreak, Mr. Johnson again requested compassionate release from the warden on November 19, 2020. [ECF No. 30 at 2, 7–11]. Because more than 30 days have elapsed since Mr. Johnson's most recent request, I find that he has again exhausted his administrative remedies.

### (b) Extraordinary and compelling reasons for release

Once an inmate has satisfied administrative exhaustion, a court may reduce his sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A). I have joined other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him more at risk for developing a serious illness from COVID-19 *and* that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. *See United States v. Boston*, No. 2:19-cr-00162, 2021 WL 77466, at *3–4 (S.D. W. Va. Jan. 7, 2021); *see also United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being at higher risk for COVID-19, I will defer to the Centers for Disease Control & Prevention's ("CDC") list of medical conditions causing an increased risk of severe illness from COVID-19. *See*

*Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 12, 2021). If an inmate can demonstrate that he has a condition identified by CDC, next, the defendant must show that his prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 and follow CDC guidance in that particular prison, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I have already held that Mr. Johnson has a qualifying medical condition because he suffers from type two diabetes mellitus, hypertension, and asthma. [ECF No. 28, at 9]. I adopt those findings here. Therefore, I must now determine whether the conditions at FCI Ashland are such that BOP cannot control the spread of COVID-19. I find that they are.

In the few months since I denied Mr. Johnson's earlier motion, FCI Ashland has gone from having only three reported cases of COVID-19 to now over 350 cases. I recognize that the situation has improved while Mr. Johnson's motions have been pending, and that FCI Ashland now only has three active inmate infections. However, the totality of the circumstances in this case convince me that BOP cannot effectively control the spread of COVID-19 at FCI Ashland and that Mr. Johnson is at an especially increased risk for severe consequences should he become infected.

When I denied Mr. Johnson's last motion, I did so largely because the

Government responded with a list of specific steps BOP was taking at FCI Ashland to prevent a major outbreak. [ECF No. 27]. Those steps included temperature checks, quarantines, requiring face coverings, increased cleaning, and limiting staff movement around the facility. *See* [ECF No. 28, at 11–12]. At the time, it appeared that those procedures were effective at preventing an outbreak. However, despite the Government's representation that BOP was taking these precautions, Mr. Johnson writes in his Emergency Motion that "very little cleaning" is taking place, that his temperature has only been taken six times since April, that he has not been tested for COVID-19, and that staff move back and forth between various units within the FCI and the Camp. *See* [ECF No. 30, at 4]. In any event, FCI Ashland experienced a major outbreak of COVID-19 within the last month and there is no reason to believe that BOP could effectively prevent a second outbreak.

The combination of Mr. Johnson's health conditions and the specific conditions at FCI Ashland during the pendency of his Motion convince me that extraordinary and compelling reasons exist to justify his release.

### (c) The 18 U.S.C. § 3553(a) Factors

Having found that Mr. Johnson has exhausted his administrative remedies and demonstrated extraordinary and compelling reasons, I must now determine whether granting him compassionate release is consistent with 18 U.S.C. § 3553(a). Section 3553(a) directs courts to consider several factors when determining an appropriate sentence. These factors include the history and characteristics of the defendant; the nature and circumstances of the offense; the kinds of sentences

available; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a).

Moreover, when a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). "In doing so, the court may modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment.'" *United States v. Alvarado*, No. 18-CR-283 (NEB/TNL), 2020 WL 3041504, at *2 (D. Minn. May 27, 2020) (citing U.S.S.G. § 5F1.2; 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release")).

Mr. Johnson's offense was no doubt a serious one, as evidenced by his 108-month sentence. However, Mr. Johnson's substantive crime is nonviolent. And, though Mr. Johnson does have a substantial criminal history, it does not include convictions for violent offenses. Instead, Mr. Johnson's criminal history reveals that he has a long and troubled history of drug use and distribution. While I believe it is important to punish defendants for distributing illegal drugs, I view drug addiction not as a criminal problem, but as a health problem.

8

I am encouraged by that fact that during his period of incarceration, Mr. Johnson has taken numerous steps to better himself, including completing a Drug Abuse Education Course [ECF No. 25-2, at 3] and courses on resume writing, interviewing, and employability skills. I have considered the § 3553(a) factors and the types of sentences available, and **FIND** that a release to home incarceration, as a substitute for imprisonment, followed by a period of supervised release, will reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide adequate deterrence, and protect the public from further crimes by Mr. Johnson.

### III. Conclusion

Mr. Johnson's Emergency Motion for Compassionate Release [ECF No. 30] is hereby **GRANTED**. Mr. Johnson's Motion for Reconsideration [ECF No. 29] is **DENIED as moot**. Mr. Johnson's sentence is **modified to TIME SERVED to be followed by 66 months of supervised release, with the first 18 months to be served on home incarceration as a substitute for imprisonment**. All previously imposed conditions of supervised release apply. During the period of home incarceration, Mr. Johnson is restricted to a 24-hour a day lock down at his residence except for medical necessities and court appearances or other activities specifically approved by the court. He has represented to the court that his address for home incarceration will be 1037 Ben Road, Saint Albans, WV 25177.

Mr. Johnson is to be placed in quarantine for a period to last 14 days **IMMEDIATELY**. At the end of the 14-day period, should he test negative for COVID-

19 and be free of the symptoms of COVID-19, he is to be **RELEASED.**

The court **DIRECTS** the Clerk to send a copy of this Order to Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal, and FCI Ashland, St. Route 716, Ashland, KY 41105.

ENTER: January 15, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE